UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GRAPHIC PACKAGING INTERNATIONAL, LLC, | ) ) | CASE NO.  1:25-cv-00186 |
| | ) | |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STEEL, PAPER AND | ) | **MEMORANDUM OPINION** |
| FORESTRY, RUBBER, | ) | **AND ORDER** |
| MANUFACTURING, ENERGY, | ) | |
| ALLIED INDUSTRIAL AND | ) | |
| SERVICE WORKERS, AFL-CIO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is a Motion for Summary Judgment filed by Plaintiff Graphic Packaging

International, LLC ("GPI").  (Doc. 16.)  Also before the Court is a Motion to Dismiss or

Alternatively for Summary Judgment filed by Defendants United Steel, Paper and Forestry,

Rubber, Manufacturing, Energy, Allied Industrial and Service Workers and Local 1250 of the

United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service

Workers (the "Union").  (Docs. 17.)  GPI seeks to vacate an arbitration award, while the Union

seeks to dismiss this suit for lack or jurisdiction or to alternatively confirm the award.  Both

parties filed oppositions (Docs. 19, 20) and replies (Docs. 21, 22).  For the reasons stated herein,

the Union's Motion to Dismiss for lack of jurisdiction is GRANTED.  The parties' motions are

otherwise DENIED without prejudice.

## I.      BACKGROUND

### A.      Factual Background

GPI operates a facility in Solon, Ohio, where it manufactures folding cartons for consumer products.  (Doc. 16-1 at 640; Doc. 1-1 at 14.)[1]  The facility operates continuously, meaning it runs 24 hours, 7 days a week.  (Doc. 16-1 at 640-41; Doc. 1-1 at 14.)  Employees work 12-hour shifts and alternate between three and four shifts per week.  (Doc. 16-1 at 641; Doc. 1-1 at 14.)  Employees are represented by the Union.  (Doc. 16-1 at 639; Doc. 18 at 667.)

GPI and the Union are parties to a Collective Bargaining Agreement ("CBA") effective from June 20, 2022, through June 19, 2025.  (Doc. 1-2 at 27; Doc. 16-1 at 642; Doc. 18 at 667.)  Because GPI operates the Solon facility continuously, employees may be scheduled to work on Sundays.  (Doc. 16-1 at 641; Doc. 1-1 at 14.)  Sundays are "premium days" for which employees are paid time and a half, among other potential benefits.  (Doc. 1-2 at 38, 85.)  In addition to other opportunities for work on premium days and overtime, throughout the relevant time period, GPI posted weekly "Overtime Request" sheets in each department.  (Doc. 1-1 at 16.)  These sheets allowed employees to sign up for overtime.  (*Id.*)  And GPI told employees to use these sheets to report which days they could work if they did not want to work but were nonetheless scheduled.  (*Id.*)

The CBA contains provisions that protect employees against lack of work while the facility is operating continuously.  (Doc. 1-2 at 86.)  For instance, the CBA provides:

> If an employee loses hours because of lack of work on continuous runs, he/she shall be given an opportunity to make up such lost hours. Make up work shall be offered in the same pay period of the following week when possible, provided said employee(s) have not worked overtime in the applicable period.

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

(*Id.* at ¶ 21(g).)

GPI faced economic headwinds in the summer of 2022.  (Doc. 16-1 at 641; Doc. 18 at 667; Doc. 1-1 at 14.)  As a result, GPI notified the Union it intended to idle the facility on the Sunday and Monday of Labor Day weekend and may idle the facility on future Sundays.  (Doc. 16-1 at 641; Doc. 18 at 667; Doc. 1-1 at 14-15.)  Consistent with its notification, GPI idled the facility on September 4, 5, and 11.  (Doc. 16-1 at 641; Doc. 18 at 667; Doc. 1-1 at 14-15.)  On September 16, 2022, GPI informed the Union it would again idle the Solon facility on Sunday, September 18.  (Doc. 16-1 at 641, Doc. 18 at 667; Doc. 1-1 at 15.)  This time, however, the Union protested the closure.  (Doc. 16-1 at 641; Doc. 18 at 667-68; Doc. 1-1 at 15.)  To the Union, the idling of the facility and GPI's failure to provide for make-up work violated the CBA. (Doc. 18 at 667-68; Doc. 1-1 at 15-16.)  Despite the protest, GPI idled the facility on fourteen Sundays from September to December 2022.  (Doc. 18 at 668; Doc. 1-1 at 15.)

During this time, GPI continued to use the "Overtime Request" sheets.  (Doc. 16-1 at 642.)  At least one supervisor reported to employees to use the "Overtime Request" sheet to inquire about the availability of make-up work.  (*Id.*)  It is unclear from the parties' briefing whether GPI scheduled employees for make-up work within the "same pay period of the following week when possible" or whether GPI scheduled employees outside of that window.  In any event, given the parties' dispute, it appears GPI did not schedule at least some make-up work, whether within the time period prescribed "when possible" or at all.

### B.    Procedural History

In September 2022, the parties followed the grievance procedures outlined in the CBA. (Doc. 1-1 at 15-16.)  When an agreement could not be reached, the parties arbitrated their dispute.  (Doc. 18 at 668; Doc. 1 at 80.)  On May 29, 2024, the arbitrator held a hearing.  (Doc.

18 at 668; Doc. 1 at 8.)  The arbitration sought to resolve two main issues: (1) could GPI properly idle its facilities; and (2) whether GPI complied with ¶ 21(g) of the CBA by providing an opportunity to make up lost hours due to the facility idling.  (Doc. 1-1 at 18-19.)  The arbitration was bifurcated: first, the arbitrator would decide whether GPI violated the CBA, then, if so, the matter would be returned to the parties to discuss settlement.  (Doc. 1-1 at 14.)  If settlement failed, the arbitrator retained jurisdiction to effectuate a remedy.  (*Id.*)

On December 17, 2024, the arbitrator issued his decision (the "Award").  (*Id.* at 13.)  On the first issue, though not relevant here, the arbitrator found GPI could properly effectuate the closure of the facility for legitimate business reasons under the CBA.  (*Id.* at 20.)  The arbitrator determined GPI maintained certain management rights under the CBA and could choose to idle the facility for legitimate business reasons, which it did here.  (*Id.*)

On the second issue, whether GPI complied with ¶ 21(g) of the CBA by providing an opportunity to make up lost hours due to the facility idling, GPI argued it complied with the CBA because it offered employees voluntary overtime.  (*Id.* at 19.)  To GPI, it complied with its obligations using the "Overtime Request" sheets offered to employees weekly.  (*Id.*)  Because the language of ¶ 21(g) does not create a guarantee and does not require GPI to provide make-up work within any time frame (except for a good faith provision to provide make-up work within the next week "when possible"), GPI argued it satisfied all its obligations.  (*Id.*)  The Union disagreed.  (*Id.* at 18.)  The Union argued ¶ 21(g) requires GPI to offer make-up work and that GPI failed to sufficiently provide reasonable notice of the availability of make-up work nor has GPI made such opportunities available in a timely manner.  (*Id.*)

The arbitrator agreed with the Union.  He found GPI violated the CBA with respect to ¶ 21(g) because it "failed reasonably to satisfy its make-up obligations."  (*Id.* at 21.)  First, he

found "make-up work" and "overtime" to be "contractually distinct." (*Id.*)  Then, he found the

only suggestion GPI complied with any offer for make-up work was the "Overtime Request"

sheets, but those sheets were never connected to make-up work opportunities due to the idling of

the facility.  (*Id.*  at 21-22.)  In this way, GPI failed to create any "special procedure" to allow for

make-up work.  (*Id.* at 22.)  On this issue, the arbitrator found:

> [A]bsent proof that each employee was offered an actual opportunity to recoup their lost hours, i.e., not just a chance to sign a sheet, but an actual opportunity to work, there can be no finding that the Company met its obligation under ¶ 21(g).

(*Id.* at 24.)  The arbitrator also found GPI's position the CBA does not impose a time limit for

offering make-up work "untenable." (*Id.*)  The arbitrator found:

> On this record, the process by which the Company unilaterally chose to idle the plant on employees' premium days, subject only to an uncertain and indefinite offer of voluntary overtime that, even if understood to be an offer of makeup work, could not hope to satisfy within any defined period the Company's obligations to its full complement of affected employees, exceeded the bounds of reasonable managerial discretion

(*Id.*)  The arbitrator, consistent with the bifurcation of the arbitration, returned the question of

remedy to the parties, subject to further arbitration if needed.  (*Id.* at 26.)

On January 31, 2025, GPI initiated this action to vacate the Award.  (Doc. 1.)  On

February 21, 2025, the Union answered and counterclaimed to confirm the Award.  (Doc. 7.)

The parties cross-moved for summary judgment on August 29, 2025.  (Docs. 16, 17.)

Alternatively, the Union also seeks dismissal of the matter without prejudice.  (Doc. 17.)  Both

parties have opposed (Docs. 19, 20) and replied (Docs. 21, 22).

## II.     LEGAL ANALYSIS

### A.     Legal Standard

A court's review of an arbitration award in a labor dispute is "extremely limited."  *Shelter Distrib., Inc. v. Gen. Drivers, Warehousemen & Helpers Loc. Union No. 89*, 674 F.3d 608, 611 (6th Cir. 2012) (citations omitted).  A court's review of an arbitration award is deferential, "especially so when it comes to challenges to the merits of an arbitrator's interpretation of the agreement."  *Mich. Fam. Res., Inc. v. Serv. Emps. Int'l Union Loc. 517M*, 475 F.3d 746, 750-52 (6th Cir. 2007) (en banc).  Unless the arbitrator (1) committed fraud or other dishonesty; (2) resolved a dispute the parties did not submit to him; or (3) did not arguably interpret and apply the collective bargaining agreement, a court will uphold the award.  *See Zeon Chems., L.P. v. United Food & Com. Workers, Loc. 72D*, 949 F.3d 980, 982-83 (6th Cir. 2020) (citing *Mich. Fam. Res., Inc.*, 475 F.3d at 751-52).

### B.     Complete Arbitration Rule

Before reaching the merits, the Court first turns to the Union's argument that this matter is premature and should be dismissed without prejudice because the arbitration proceedings are not final.  (Doc. 18 at 671.)

A court cannot review an arbitration award unless it is final.  *Greenhouse Holdings, LLC v. Int'l Union of Painters & Allied Trades District Council 91*, 43 F.4th 628, 631 (6th Cir. 2022) ("A party can challenge only a 'final' award."); *see also Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 748 F.3d 708, 718 (6th Cir. 2014) (discussing policy reasons "for generally withholding judicial review until the conclusion of an arbitration proceeding") (collecting cases); *Peabody Holdings Co., LLC v. United Mine Workers of Am., Int'l Union, Unincorporated Ass'n*, 815 F.3d 154, 159 (4th Cir. 2016) ("Before a court may

review the award . . . it must determine that the award is final and binding.") (citation omitted).

Other rules of finality aside, relevant here is the "complete arbitration rule." *Savers Prop.*, 748

F.3d at 719.  Under the complete arbitration rule, "an award is final only if it determines both

liability and damages." *Greenhouse Holdings*, 43 F.4th at 631; *Savers Prop.*, 748 F.3d at 719

("arbitration was not complete because there was no 'final' award" where "arbitration panel

issued an interim award resolving only the matter of liability"); *Peabody Holdings*, 815 F.3d at

159 ("courts have held that a federal district court should not review a labor arbitrator's decision

under Section 301 until the arbitrator has ruled on both liability and remedies").

Though the Sixth Circuit has not addressed this issue specifically, courts have held the

complete arbitration rule is prudential, not jurisdictional.  *Peabody Holdings*, 815 F.3d at 159

("the complete arbitration rule necessarily constitutes only a prudential limitation on a court's

authority to review a labor arbitrator's decision").  That is, the court is not deprived of

jurisdiction under the rule but may decline to hear the matter until it is fully resolved.  That said,

there are good reasons for strictly adhering to the rule.  As the Fourth Circuit explained:

> [The complete arbitration rule] ensures that courts will not become incessantly dragooned into deciding narrow questions that form only a small part of a wider dispute otherwise entrusted to arbitration. And it mitigates the possibility of one party using an open courthouse door to delay the arbitration. Finally, it makes good sense, when working within a hierarchical system, to give the decision maker at each level a full and fair say as to the whole problem before passing the case on to the next stage of review. Internal appeals in the state and federal courts generally abide by this principle, and there is no reason that it should not operate as a presumptive maxim in this context as well.

*Peabody Holding*, 815 F.3d at 160 (internal citations omitted); *see also Savers Prop.*, 748 F.3d at

718-19 (discussing policy considerations, including judicial economy, for applying complete

arbitration rule).

Consistent with the complete arbitration rule, courts routinely dismiss matters where arbitrators have decided liability but reserved deciding the remedy.  *See Greenhouse Holdings*, 43 F.4th at 631; *Savers Prop.*, 748 F.3d at 719; *Peabody Holdings*, 815 F.3d at 159; *Am. Mar. Officers Union v. Oglebay Norton Marines Servs. Co., LLC*, No. 06-cv-176, 2006 WL 8446734, 2006 U.S. Dist. LEXIS 107300, *10 (N.D. Ohio Aug. 29, 2006) (dismissing without prejudice complaint to vacate arbitration award under complete arbitration rule because "[s]tringent application of the complete arbitration rule serves to deter these abuses by forcing parties to consider the issue of finality prior to initiating costly and time-consuming races to the courthouse"); *Wheeling Power Co. – Mitchell Plant v. Local 492, Util. Workers Union of Am., ALF-CIO*, 145 F.4th 468, 471 (4th Cir. 2025) ("the complete arbitration rule, if properly invoked, requires a district court to dismiss the case"); *Verizon Pa. LLC v. Comms. Workers of Am.*, 216 F. Supp.3 d 530, 534 (E.D. Pa. 2016) ("An award is not considered final and binding if it postpones the judgment of a remedy").

The Union argues the complete arbitration rule applies here.  (Doc. 18 at 671-77.)  The parties bifurcated the arbitration in this case.  The arbitrator only resolved the issue of liability and explicitly retained jurisdiction to determine the remedy.  Rather than return to the arbitrator, GPI filed this suit.  To the Union, because the arbitrator determined only liability, and reserved determination on the remedy, this matter fits within the complete arbitration rule.

GPI raises two arguments to refute the application of the complete arbitration rule.  (Doc. 20 at 728-30.)  First, GPI argues the Union waived the argument.  (*Id.* at 728-29.)  Second, GPI argues even if the Union did not waive the argument, the Court should not apply it here because this is an "extreme case" warranting an exception from the rule.  (*Id.* at 729-30.)  To be clear, GPI does not argue the rule is inapplicable—instead, GPI argues the Union waived the argument

or an exception to the rule applies.  As to waiver, GPI argues the Union did not raise the issue until summary judgment.  (*Id.* at 729.)  The Union did not raise the issue in its answer, it did not move to dismiss, and did not list it as a defense.  (*Id.*)  Further, the Union counterclaimed seeking to confirm the award, arguing the award *is* final.  (*Id.*)  To GPI, it is too late to raise the issue now.  (*Id.*)  As to an exception to the complete arbitration rule, GPI argues this is an extreme and exceptional case warranting departure from the rule because GPI would suffer extreme prejudice.  (*Id.*)  GPI points to an already "erroneous" arbitrator decision which would be made worse by having to return for arbitration on the remedy.  (*Id.*)

The Fourth Circuit considered a case much like this in *Wheeling Power*.  145 F.4th at 471.  There, Wheeling Power operated a facility called the "Mitchell Plant" whose employees were unionized.  *Id.* at 471.  Another facility owned by Wheeling Power was forced to idle after a fire.  *Id.*  Because the Mitchell Plant had a staff shortage, Wheeling Power temporarily assigned employees from the idled plant to the Mitchell Plant.  *Id.*  The union grieved and argued the arrangement violated the CBA.  *Id.*  The parties arbitrated their dispute, and an arbitrator eventually found the action violated the CBA.  *Id.*  Yet the arbitrator "directed . . . Wheeling Power and the union to fashion a remedy on their own, with the arbitrator 'retaining jurisdiction' if the parties 'reached an impasse over the remedy issue."  *Id.*  Rather than comply with the arbitrator's instruction, Wheeling Power filed suit in district court and moved to vacate the award.  *Id.*

In the district court, both parties submitted motions for summary judgment—Wheeling Power moved to vacate the award, and the Union moved to confirm the award.  *Id.* at 473.  At that time, neither party made arguments relating to the finality of the award.  *Id.*  The district court upheld the award and Wheeling Power appealed.  *Id.*  For the first time on appeal,

Wheeling Power acknowledged the suit might have been premature under the complete arbitration rule. *Id.* The Fourth Circuit found the complete arbitration rule applied and the suit was premature. *Id.* at 474-45. The Fourth Circuit recognized the union never made this argument until appeal. *Id.* at 475. And because the complete arbitration rule is prudential, and not jurisdictional, "the rule, like all non-jurisdictional rules, is subject to ordinary principles of waiver and forfeiture." *Id.* (citation omitted). Just as plainly as the complete arbitration rule applied, the Fourth Circuit found the union forfeited its ability to invoke it. *Id.* ("We've no doubt that the union forfeited reliance on the complete arbitration rule by not alerting the district court that it had a complete defense to the company's lawsuit."). That said, the Fourth Circuit excused the forfeiture. *Id.* In doing so, the panel reaffirmed a strict view of the complete arbitration rule, reiterating "a lawsuit to enforce or vacate an arbitration award is premature when the arbitrator decides liability but retains jurisdiction over the remedy." *Id.* at 475-76. Considering the policy rationales behind the rule, the Fourth Circuit found persuasive reasons to justify overlooking the forfeiture. *Id.* at 476.

Here, the complete arbitration rule applies to this suit. GPI's suit is plainly premature under that doctrine. The Sixth Circuit has routinely held where an arbitrator decides liability, but reserves a finding on remedy, a lawsuit seeking to vacate the award is premature under the complete arbitration doctrine. *See Greenhouse Holdings*, 43 F.4th at 631; *Savers Prop.*, 748 F.3d at 79. The question remains, however, whether the Union timely invoked the complete arbitration rule. Even if the Union did not, *Wheeling Power* suggests such waiver does not preclude the Court from finding the complete arbitration rule bars the present suit. If the Fourth Circuit was willing to excuse the union's failure to invoke the doctrine until briefing *at the appellate level*, even if the Union here waived or forfeited the rule by not invoking it until

summary judgment, that waiver or forfeiture should be excused.  The Union's waiver or forfeiture was less severe than the union's forfeiture in *Wheeling Power*.  In fact, the *Wheeling Power* court noted the complete arbitration rule was not even invoked at the district court level *at all*.  But here, the Union at least raised the issue in its opening brief for judgment on the pleadings and summary judgment.  *Wheeling Power* aside, also consider the Sixth Circuit's strict application of the complete arbitration rule.  *Savers Prop.*, 748 F.3d at (holding judicial review was "improper" before issuance of a final arbitration award under complete arbitration rule); *Am. Maritime Officers*, 2006 WL 8446734, 2006 U.S. Dist. LEXIS 107300, *10 (describing application of the rule as "stringent").

It is certainly true the Union answered the complaint.  At that time, it did not move to dismiss the suit.  And it is true the Union counterclaimed.  At that stage, all signs pointed to the parties understanding the arbitration was "final" and ripe for judicial review.  But the Union changed course at summary judgment, including a request for judgment on the pleadings.  Late, and as contradictory as it may be, the Union's actions are excusable considering the purposes of the complete arbitration rule.

Despite GPI's insistence otherwise, no exception to the rule applies here.  While GPI argues this is an exceptional and extreme case, it is not.  Again, reference to *Wheeling Power* is helpful.  The Fourth Circuit found it was not an "extreme case" which warranted overlooking the rule even though the parties would suffer some prejudice from re-arbitrating the matter.  GPI's argument it will suffer prejudice because the arbitrator wrongly found in favor of the Union fares no better.  If the Court accepted this argument, the complete arbitration rule would be swallowed by the exception—every party moving to vacate an award after a finding on liability but before a finding as to remedy would argue the arbitration prejudiced them in some way.  District courts

would thus be thrust into deciding whether to vacate or confirm an award before the completion of the arbitration.  *See Verizon*, 216 F. Supp. 3d at 535 (rejecting argument "complete arbitration rule is inapplicable where an arbitration award exceeds the scope of its authority and the unresolved questions (of damages) flow from the unlawfully decided issue" because such exception would "undermine the rule's purpose" and would allow the rule to be "circumvented" in every case).

**III.    CONCLUSION**

For the reasons stated above, Plaintiff Graphic Packaging International, LLC's Motion to Vacate the Arbitration Award (Doc. 16) is DENIED without prejudice.  Defendants United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers' and Local 1250 of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers' Motion to Dismiss or for Summary Judgment (Doc. 17) is GRANTED as it relates to the jurisdictional arguments but is otherwise DENIED without prejudice.  This matter is DISMISSED without prejudice.

**IT IS SO ORDERED.**

Date:   March 12, 2026

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE